UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

JAROSLAW T. WOJCIK, on behalf of himself and
all others similarly situated,

                              Plaintiff,

v.

MIDLAND CREDIT MANAGEMENT, INC.,

                              Defendant.

**MEMORANDUM & ORDER**
18-CV-3628 (MKB) (RML)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

    Plaintiff Jaroslaw T. Wojcik commenced the above-captioned action against Midland Funding, LLC, ("Midland")[1] and Defendant Midland Credit Management, Inc. by filing a Summons with Notice in the Supreme Court of New York, County of Queens, and on June 22, 2018, Midland and Defendant removed the action to the United States District Court for the Eastern District of New York. (Notice of Removal, Docket Entry No. 1.) On June 22, 2018, Plaintiff filed the Complaint alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), (Compl., Docket Entry No. 5), and on November 2, 2018, Midland and Defendant moved to compel arbitration of Plaintiff's claims, (Notice of Mot. to Compel Arbitration ("Def. Mot."), Docket Entry No. 11; Mem. in Supp. of Def. Mot. ("Def. Mem."), Docket Entry No. 11-1). On April 9, 2019, the Court referred the motion to Magistrate Judge Robert M. Levy for a report and recommendation. (Order dated Apr. 9, 2019.)

    Currently before the Court is a report and recommendation dated June 3, 2019, from

---

[1] On June 9, 2019, Plaintiff filed a notice of voluntary dismissal as to Midland. (Notice of Voluntary Dismissal, Docket Entry No. 16.) Accordingly, the only remaining Defendant is Midland Credit Management, Inc.

Judge Levy recommending that the Court deny the motion to compel arbitration (the "R&R"). (R&R, Docket Entry No. 15.) On June 17, 2019, Defendant filed objections to the R&R, and on June 24, 2019, Plaintiff responded to Defendant's objections. (Def. Obj. to R&R ("Def. Obj."), Docket Entry No. 17; Pl. Resp. to Def. Obj. ("Pl. Resp."), Docket Entry No. 18.) For the reasons set forth below, the Court adopts the R&R and denies Defendant's motion to compel arbitration.

I. **Background**

   a. **Factual background**[2]

On or about April 4, 2010, Synchrony Bank ("Synchrony"), a federal savings bank, received an application for an Amazon.com card account completed by Plaintiff. (Aff. of Angel Nayman in Supp. of Def. Mot. ("Nayman Aff.") ¶¶ 2, 6, Docket Entry No. 11-3.) Synchrony subsequently approved the application, opened an Amazon.com account in Plaintiff's name (the "Account"), and mailed Plaintiff a letter containing a copy of the agreement that governed the Account (the "Agreement"). (*Id.* ¶¶ 6–8; *see also* Agreement, annexed to Nayman Aff. as Ex. A, Docket Entry No. 11-3.) The Agreement includes an arbitration provision, which provides:

---

[2] In deciding the motion to compel arbitration, the Court considers the factual allegations in the Complaint, the document attached thereto, and the affidavits submitted in support of the motion to compel arbitration. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) ("In deciding motions to compel [arbitration], courts apply a standard similar to that applicable for a motion for summary judgment," which "requires a court to consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." (alteration, citations, and internal quotation marks omitted)); *Boroditskiy v. European Specialties LLC*, 314 F. Supp. 3d 487, 492 (S.D.N.Y. 2018) (same); *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 182 (S.D.N.Y. 2018) (explaining that in deciding a motion to compel arbitration, "the court is not limited to the pleadings, and need not assume the truth of the facts alleged in the complaint," and instead must "consider all relevant, admissible evidence"); *see also Geeta Bugtani v. Dish Network LLC*, No. 18-CV-5003, 2019 WL 2914158, at *3 (E.D.N.Y. July 8, 2019) (explaining that "[m]otions to compel arbitration are evaluated under a standard similar to the standard for summary judgment motions," and considering "all relevant admissible evidence").

> Arbitration provision. Please read this arbitration provision carefully. It provides that any past, present or future legal dispute or claim of any kind, including statutory and common law claims and claims for equitable relief, that relates in any way to your account, card or your relationship with us ("claim") will be resolved by binding arbitration if either you, or we elect to arbitrate.
>
> Right to reject arbitration: You may reject this arbitration provision, in which event neither you nor We will have the right to require arbitration. Rejection will not affect any other aspect of these terms. To reject the arbitration provision, you must send Us a notice that We receive within 60 days after you open your Account. . . .
>
> As used in this provision: "We," "Us," and "Our" mean GE Money Bank and all of its respective parents, subsidiaries, affiliates, predecessors, successors, assigns, employees, officers and directors (collectively, the "Bank"). . . . Utah law shall apply to the extent state law is relevant under Section 2 of the [Federal Arbitration Act].

(the "Arbitration Provision"). (Agreement; *see also* Change in Terms, annexed to Nayman Aff. as Ex. D, Docket Entry No. 11-3.)

On or about January 19, 2016, Midland, "one of the nation's largest buyers of unpaid debt," (Compl. ¶ 17), purchased the Account from Synchrony as part of a portfolio of charged-off debts. (Aff. of Sean Mulcahy in Supp. of Def. Mot. ("Mulcahy Aff.") ¶¶ 5, 7, Docket Entry No. 11-2.) Thereafter, Defendant, a servicer for Midland that manages the debt and services accounts owned by Midland, began servicing the Account.[3] (*Id.* ¶ 2.)

On February 3, 2017, Defendant sent Plaintiff a letter to collect a past-due debt owed to Midland on the Account (the "February 2017 Letter"). (Compl. ¶¶ 7–8; *see also* Feb. 2017 Letter, annexed to Compl. as Ex. A, Docket Entry No. 5-1.) The February 2017 Letter identifies Synchrony as the original creditor of Plaintiff's debt, Midland as the current creditor of Plaintiff's debt, and Defendant as the current servicer of Plaintiff's debt. (Feb. 2017 Letter 2.)

---

[3] Midland and Defendant are wholly owned subsidiaries of Encore Capital Group, Inc. (Mulcahy Aff. ¶ 2.)

Plaintiff alleges that the letter "deprived [him] of his rights not to be subject to abusive, deceptive, or misleading debt collection practices," including by failing to notify Plaintiff that his "current balance" might "increase due to . . . accrued interest, late charges, and/or other charges." (Compl. ¶¶ 7, 35.)

### b. Report and recommendation

In recommending that the Court deny the motion to compel arbitration, Judge Levy rejected Defendant's arguments that it could compel arbitration (1) as Midland's agent; (2) as a third-party beneficiary; and (3) by invoking equitable estoppel. (*See generally* R&R.)

First, Judge Levy explained that under Utah law — which the parties agree govern the Agreement — while "an agency relationship with a principal to a contract" can sometimes "give the agent the authority to enforce a contractual term," the agent cannot do so "for the agent's own benefit." (*Id.* at 6 (quoting *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1297 (10th Cir. 2017)) (emphasis omitted).) Accordingly, because Defendant seeks to enforce the Arbitration Provision for its own benefit, *i.e.*, to compel Plaintiff to arbitrate his claims against it for allegedly improperly language in the February 2017 Letter, Judge Levy concluded that Defendant could not rely on an agency relationship to enforce the Arbitration Provision. (*Id.* at 6–7.)

Second, Judge Levy concluded that Defendant could not compel arbitration as a third-party beneficiary because it had not demonstrated that Plaintiff, "as one of the contracting parties, intended to confer any separate and distinct benefit on [Defendant] or other third-party debt collectors." (*Id.* at 8 (internal quotation marks omitted).)

Third, Judge Levy found that Defendant could not invoke equitable estoppel to enforce the Arbitration Provision because Plaintiff's claims arise from Defendant's conduct as a non-

4

signatory debt collector, and not from the terms of the Agreement itself. (*Id.* at 9–10.)

### c. Defendant's objections and Plaintiff's responses

Defendant argues that Judge Levy erred in recommending that the Court deny its motion to compel arbitration because (1) "Midland is entitled to enforce the [A]rbitration [P]rovision and demand arbitration of Plaintiff's claims against both Midland and [Defendant]," and (2) Defendant is separately entitled to invoke the Arbitration Provision, (Def. Obj. 5–13), as (1) an affiliate of Midland, pursuant to the "clear language" of the Agreement, (2) a non-signatory, pursuant to the doctrine of equitable estoppel, and (3) a third-party beneficiary, (*id.* at 8–14).

Plaintiff argues that Midland "now is not a party to this action," and therefore cannot invoke the Arbitration Provision on Defendant's behalf. (Pl. Resp. 1.) In addition, Plaintiff argues that Defendant cannot compel arbitration (1) as a non-signatory, regardless of its rights as an "affiliate" under the plain language of the Agreement, (2) by invoking equitable estoppel, because "none of the allegations in the Complaint rely on the existence of [the Agreement]," or (3) as a third-party beneficiary, because "it is not possible that Plaintiff intended to confer a separate and distinct benefit" on Defendant in the Agreement. (*Id.* at 2–4.)

## II. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir.

2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only conclusory or general objections. *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain *de novo* review by [a] district court"); *see* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file *specific written objections* to the [magistrate judge's] proposed findings and recommendations." (emphasis added)); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758, (2d Cir. 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under Fed. R. Civ. P. 72(b)." (alterations omitted) (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))).

### ii. Arbitration

The Federal Arbitration Act ("FAA") requires courts to compel arbitration of claims that the parties have agreed to arbitrate. *See AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Courts consider four factors in order to determine whether an action should be dismissed in favor of arbitration: "(1) whether the parties agreed to arbitrate; (2) the scope [of] the arbitration agreement; (3) whether, if federal statutory claims are asserted, Congress intended those claims to be nonarbitrable; and (4) whether, if some but not all of the claims in the case are arbitrable, the case should be stayed pending arbitration." *McAllister v. Conn. Renaissance Inc.*, 496 F. App'x 104, 106 (2d Cir. 2012) (citing *JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)); *see also Garcia v. Golden Abacus Inc.*, No. 16-CV-6252, 2017 WL 2560007, at *2 (S.D.N.Y. June 13, 2017) (same).

In deciding a motion to compel arbitration, courts apply a similar standard to that applied to a motion for summary judgment and "draw all reasonable inferences in favor of the non-moving party." *Nicosia*, 834 F.3d at 229. The party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000)). In addition, "[a] district court must stay proceedings once it is 'satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.'" *Nicosia*, 834 F.3d at 229 (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)); *see also Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("[A] stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay requested.").

### b. Midland cannot invoke the Arbitration Provision on Defendant's behalf

Defendant argues that Midland is entitled to enforce the Arbitration Provision and demand arbitration of Plaintiff's claims against Defendant. (Def. Obj. 1.) In support, Defendant argues that the fact that Plaintiff filed a notice of voluntary dismissal as to Midland "changes nothing" because Midland and Defendant moved to compel arbitration before Plaintiff dismissed Midland and because Midland "has an ongoing vested interest in ensuring that claims against its affiliate concerning actions taken on its behalf proceed in arbitration." (*Id.* at 8.)

Plaintiff argues that Midland cannot invoke the Arbitration Provision because it is not a party to this action and therefore "lacks standing to take any action in this case even on behalf of an alleged affiliate such as [Defendant]." (Pl. Resp. 1.)

Voluntary dismissal ordinarily moots all pending motions filed by the dismissed party. *See United States v. Andreozzi*, No. 17-CV-3720, 2018 WL 894071, at *1 (2d Cir. Jan. 5, 2018)

7

(granting the appellant's motion for voluntary dismissal and denying all pending motions as moot); *Hines v. Karl Storz Endoscopy–Am., Inc.*, No. 11-CV-3830, 2013 WL 12358478, at *3 (E.D.N.Y. July 3, 2013) (granting the plaintiff's motion to voluntarily dismiss and thus denying the defendant's motion to compel arbitration as moot); *FLB, LLC v. 5Linx*, No. 06-CV-6463, 2008 WL 3927501, at *1 n.1 (W.D.N.Y. Aug. 21, 2008) (finding one defendant's motion to compel arbitration moot after plaintiff voluntarily dismissed that defendant); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) ("Voluntary dismissal . . . is self-executing and moots all pending motions."). In addition, a dismissed defendant loses "the concomitant authority to participate in motion practice." *Martins v. Cty. of Nassau*, No. 15-CV-5120, 2017 WL 1458770, at *3 (E.D.N.Y. Apr. 24, 2017); *see also Kreidler v. Pixler*, No. 06-CV-0697, 2007 WL 445965, at *1 (W.D. Wash. 2007) (holding that a dismissed defendant was "no longer a party to th[e] action," and therefore "lack[ed] standing to file [a] motion").

As a non-party, Midland cannot compel Plaintiff to arbitrate his claims against Defendant. Defendant does not cite, and the Court was unable to find, any authority that would allow the Court to grant or deny any pending submission by Midland. Rather, according to the case law, Plaintiff's voluntary dismissal of Midland renders Midland's motion to compel arbitration moot. *See Andreozzi*, 2018 WL 894071, at *1 (granting motion for voluntary dismissal and denying all pending motions as moot); *FLB, LLC*, 2008 WL 3927501, at *1 n.1 ("Based upon th[e] voluntary dismissal [of one of the defendants], the two motions filed by [it] to compel arbitration have been rendered moot."). Defendant also does not cite, and the Court was unable to find, any authority indicating that Midland's purported "vested interest" in "ensuring" arbitration in this case alters the conclusion that Midland's motion to compel arbitration is moot. (*See* Def. Obj. 8.) Accordingly, the Court finds that Midland cannot invoke

8

the Arbitration Provision on Defendant's behalf.

### c. Defendant is not entitled to invoke the Arbitration Provision

Defendant argues that, as a non-signatory to the Agreement, it can compel arbitration (1) by invoking equitable estoppel, and (2) as a third-party beneficiary. (Def. Obj. 10–13.) In addition, Defendant argues that the plain language of the Arbitration Provision requires Plaintiff to arbitrate claims "between you . . . and us [and] our affiliates," that because Midland "step[ped] into the shoes of Synchrony," it is the "us" in that provision, and that Plaintiff must therefore arbitrate his claims against Defendant as an "affiliate[]" of Midland. (*Id.* at 9.)

Plaintiff argues that equitable estoppel does not apply because his claims do not rely on the existence of the Agreement or any of its terms. (Pl. Resp. 3.) In addition, Plaintiff argues that under Utah law, Defendant cannot invoke the Arbitration Provision — even if it contemplates arbitration of Plaintiff's claims against it — because it is a non-signatory and thus has no right to invoke a contractual provision for its own benefit. (*Id.* at 2.) Plaintiff also argues that Defendant is not a third-party beneficiary because "it is not possible that Plaintiff intended to confer a separate and distinct benefit" on Defendant in the Agreement. (*Id.* at 3–4.)

"[D]espite the strong federal policy favoring arbitration, arbitration remains a creature of contract," which requires courts to decide whether the parties have agreed to arbitrate, a question "governed by state-law principles of contract formation." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 287 (2d Cir. 2019); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (citation omitted)); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) ("State law principles of contract formation govern the arbitrability question." (citation omitted)); *Patterson v. Raymours Furniture Co., Inc.*, 96 F.

Supp. 3d 71, 76 (S.D.N.Y. 2015) ("The question whether the parties agreed to arbitrate is governed by state law principles regarding contract formation."). Under Utah law, "as a general rule, only parties to the contract may enforce the rights and obligations created by the contract." *Fericks v. Lucy Ann Soffe Trust*, 100 P.3d 1200, 1206 (Utah 2004); *see also Bybee v. Abdulla*, 189 P.3d 40, 43 (Utah 2008) ("Most contracts bind only those who bargain for them," and "[a]rbitration agreements are not exempt from this rule."); *Belnap*, 844 F.3d at 1294 (quoting *Fericks*, 100 P.3d at 1205–06); *Ferro v. Allied Interstate, LLC*, No. 19-CV-49, 2019 WL 3021234, at *4 (E.D.N.Y. July 10, 2019) (quoting same); *Solid Q Holdings LLC v. Arenal Energy Corp.*, 362 P.3d 295, 287 (Utah Ct. App. 2015) ("The general rule of arbitration agreements is that one who has not manifested assent to an agreement to arbitration cannot be required to submit to arbitration." (quoting *Ellsworth v. Am. Arbitration Ass'n*, 148 P.3d 983, 989 (Utah 2006))).

"However, under certain circumstances, a nonsignatory to an arbitration agreement can enforce or be bound by an agreement between other parties." *Ellsworth*, 148 P.3d at 989. These circumstances are: "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel." *Id.* at 989 n.11; *Belnap*, 844 F.3d at 1294 (quoting same); *Ferro*, 2019 WL 3021234, at *4 (quoting same); *see also Arthur Anderson LLP v. Carlisle*, 566 U.S. 624, 630–31 (2009) (explaining that "traditional principles" of state law "allow a contract to be enforced by or against nonparties to a contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel" (citation and internal quotation marks omitted)).

10

The Court first discusses Defendant's argument that, although it is a non-signatory, it can compel arbitration based on estoppel, and then considers Defendant's third-party beneficiary argument.[4]

### i. Defendant cannot invoke equitable estoppel

"In general, equitable estoppel precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 708 (10th Cir. 2011) (alteration, citation, and internal quotation marks omitted). In the arbitration context, equitable estoppel may be "enforced by a nonsignatory when the signatory plaintiff sues a nonsignatory defendant on the contract but seeks to avoid the contract-mandated arbitration by relying on the fact that the defendant is a nonsignatory." *Ellsworth*, 148 P.3d at 989 n.12; *Inception Mining, Inc. v. Danzig, Ltd.*, 312 F. Supp. 3d 1271, 1281 (D. Utah 2018) (same); *see also Lenox MacLaren Surgical Corp.*, 449 F. App'x at 708 ("A signatory plaintiff cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." (citation and internal quotation marks omitted)).

---

[4] Defendant concedes that it cannot compel arbitration based on an agency theory. Indeed, Defendant cannot rely on an agency theory because an agency relationship with a principal to a contract "does not give the agent the authority to enforce a contractual term for the agent's own benefit." *Fericks*, 100 P.3d at 1206; *see also Belnap*, 844 F.3d at 1294 (same). Defendant seeks to enforce the Arbitration Provision for its own benefit, *i.e.*, to compel Plaintiff to arbitrate his claims based on Defendant's own conduct in attempting to collect a debt and therefore cannot rely on an agency theory. *See Ferro*, 2019 WL 3021232, at *4 ("Courts across the country — including in this district — have . . . concluded that Utah law does not permit a debt collector to enforce an arbitration provision in an agreement between an accountholder and a creditor under an agency theory." (collecting cases)).

Defendant cannot invoke equitable estoppel to enforce the Arbitration Provision against Plaintiff because Plaintiff's suit against Defendant is not based "on the contract." *Ellsworth*, 148 P.3d at 989 n.12 (explaining that a defendant can invoke equitable estoppel when the "plaintiff sues . . . *on the contract* but seeks to avoid the contract-mandated arbitration [provision]" (emphasis added)). Plaintiff's claims arise out of Defendant's action in sending the February 2017 Letter to Plaintiff to collect a debt on the Account, which allegedly "deprived [Plaintiff] of his rights not to be subject to abusive, deceptive, or misleading debt collection practices." (*See* Compl. ¶¶ 7–8, 35.) Plaintiff's claims therefore arise out of Defendant's actions as a debt collector and do not concern the Agreement which governs his Amazon.com cardholder relationship. *Ferro*, 2019 WL 3021234, at *6 (concluding that the plaintiff's claims were not based "on the contract" because the plaintiff's allegations against a debt collector did "not stem from or rely upon the underlying [credit card] agreement"). Although absent the Agreement, Defendant may not have sent Plaintiff the February 2017 Letter, a but-for relationship is insufficient to show that Plaintiff's claims are based "on the contract." *See Lenox MacLaren Surgical Corp.*, 449 F. App'x at 709 ("For a plaintiff's claims to rely on the contract containing the arbitration provision, the contract must form the legal basis of those claims; it is not enough that the contract is factually significant to the plaintiff's claims or has a 'but-for' relationship with them."); *see also In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002) ("The plaintiff's *actual dependence* on the underlying contract in making out the claim against the nonsignatory defendant is . . . always the sine qua non of an appropriate situation for applying equitable estoppel."), *rev'd on other grounds*, *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003).

In addition, in bringing his claims, Plaintiff does not seek to benefit from the Agreement, consequently, there is nothing inequitable about declining to enforce the Arbitration Provision against Plaintiff. *See Ellsworth*, 148 P.3d at 989 (holding that equitable estoppel did not apply and explaining that "[t]he rationale behind this exception is that a nonsignatory should be estopped from avoiding arbitration when the nonsignatory seeks to benefit from some portions of the contract but avoid the arbitration provisions"); *Belnap*, 844 F.3d at 1294 n.17 (explaining that equitable estoppel may apply when the plaintiff "seeks to benefit from some portions of the contract but avoid the arbitration provisions"); *Solid Q Holdings LLC*, 362 P.3d at 287 (holding that equitable estoppel did not apply because the plaintiff was suing based on "an instrument without an arbitration provision" and because the defendant "ha[d] not alleged that [the plaintiff] ha[d] received direct benefits from the [agreement containing an arbitration provision]"). Accordingly, Plaintiff's suit against Defendant is not based "on the contract" and as a result, Defendant cannot invoke equitable estoppel to enforce the Arbitration Provision.

### ii. Defendant is not a third-party beneficiary to the Agreement

A third-party beneficiary is a party "recognized as having enforceable rights created in [it] by a contract to which [it is] not [a party] for which [it gives] no consideration." *Bybee*, 189 P.3d at 49 (citation omitted); *see also Arthur Anderson*, 556 U.S. at 630 (explaining that "traditional principles of state law allow a contract to be enforced by . . . nonparties to the contract through . . . third-party beneficiary theories" (citation and internal quotation marks omitted)); *O'Connor v. R.F. Lafferty & Co., Inc.*, 965 F.2d 893, 901 (10th Cir. 1992) ("If a nonsignatory to an agreement is a third-party beneficiary then he is able to enforce the agreement."). A third-party beneficiary may only enforce rights in a contract to which it is a nonparty if "[a]n intent to benefit the third party [is] . . . apparent from the construction of the

13

contract in light of all surrounding circumstances." *O'Connor*, 965 F.2d at 901; *see also id.* ("[T]he key inquiry when determining whether a nonsignatory to an agreement is a third party beneficiary is the intent of the parties.").

Defendant cannot invoke the Arbitration Provision as a third-party beneficiary. The Arbitration Provision provides: "any past, present or future legal dispute or claim of any kind . . . that relates in any way to your account, card or your relationship with us . . . will be resolved by binding arbitration if either you, or we elect to arbitrate." (Agreement.) It further provides that "us" and "we" "mean GE Money Bank and all of its respective parents, subsidiaries, affiliates, predecessors, successors, assigns, employees, officers and directors (collectively, the 'Bank')." (*Id.*) If Midland were a party to this action, it would thus be entitled to invoke the Arbitration Provision as a third-party beneficiary, since the 2010 Agreement was assigned to it and the Arbitration Provision evidences an intent to benefit "assigns." (*Id.*) However, there is nothing in the Agreement or otherwise that evidences an intent to benefit Defendant, third-party debt collectors, or affiliates of assigns. *O'Connor*, 965 F.2d at 901 (explaining that a third-party beneficiary may enforce contractual rights if the contract evidences "[a]n intent to benefit the third party").

Defendant unpersuasively argues that Midland is the "us" in the Arbitration Provision because it "stepped into the shoes of Synchrony" and therefore the Agreement contemplates arbitration against Midland's "parents, subsidiaries, affiliates, predecessors, successors, assigns, employees, officers and directors." (*See* Def. Obj. 9.) Assignment "generally operates to vest in the assignee the same right, title or interest the assignor has in the thing assigned," *TFG-Illinois, L.P. v. United Maintenance Co., Inc.*, 829 F. Supp. 2d 1097, 1108 n.78 (D. Utah 2011), but it does not compel the literal approach advanced by Defendant — that once Synchrony assigned its

14

rights in the Agreement to Midland, each reference to "Synchrony" or "GE Money Bank" in the Agreement was thereby replaced by "Midland." *See Mims v. Glob. Credit & Collection Corp.*, 803 F. Supp. 2d 1249, 1356 (S.D. Fla. 2011) (noting that assignment "does not mean that when [the third party] transferred its rights to [the defendant], every reference to [the third party] in the [a]greement now meant [defendant]"). Such a reading would render the provision in the Agreement providing for arbitration of claims against Synchrony's "assigns" superfluous, contrary to the rules of contract interpretation. *Mims*, 803 F. Supp. 2d 1249 (rejecting similar argument made by the defendant because such a reading would "render the inclusion of 'assigns' in the definition of 'us' entirely superfluous"); *see also Lee v. Barnes*, 977 P.2d 550, 552 (Ct. App. Utah 1999) ("Contract should be read as a whole, in an attempt to harmonize and give effect to all of the contract provisions."); *Icon Health & Fitness, Inc. v. Park City Entern., Inc.*, No. 10-CV-195, 2013 WL 4027504, at *8 (D. Utah Aug. 7, 2013) ("A reasonable reader would not interpret [a] phrase [in a contract] . . . in a way that would render half the sentence . . . superfluous."). A more reasonable reading gives meaning to each phrase in the Arbitration Provision, which confers rights on enumerated parties, and does not include Defendant, third-party debt collectors, or affiliates of assigns, as one of those parties. *See Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1171–72 (11th Cir. 2011) (explaining that the loan agreement in question did "not show, on its face or elsewhere, an intent to allow anyone other than [the enumerated parties] to compel arbitration of a dispute" and thus denying the motion to compel arbitration); *Marciel v. Springleaf Fin. Servs., Inc.*, No. 14-CV-830, 2014 WL 6453781, at *7 (D. Or. Nov. 17, 2014) (declining to confer third-party beneficiary status on the defendant because the contract "specifically defines 'we, us, and our,'" and does not include the defendant); *Fox v. Nationwide Credit, Inc.*, No. 09-CV-7111, 2010 WL 3420172, at *5 (N.D. Ill. Aug. 25, 2010)

(rejecting debt collector's effort to invoke arbitration provision because "the rights created by the arbitration provision . . . broad as they may be with regard to the *types* of claims that must be submitted to arbitration — were clearly intended to be limited to a specific list of persons and entities that had a right to enforce it"). Accordingly, though the Agreement contemplates arbitration of claims brought against "assigns," *i.e.*, Midland, it does not "evidence a clear intent to confer rights" on Defendant, third-party debt collectors, or affiliates of assigns, and Defendant therefore cannot invoke the Arbitration Provision as a third-party beneficiary.

### III. Conclusion

For the foregoing reasons, the Court denies the motion to compel arbitration.

Dated: July 30, 2019
       Brooklyn, New York

SO ORDERED:

         s/ MKB
MARGO K. BRODIE
United States District Judge